IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| BENJAMIN NASH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 324-066 |
| | ) | |
| ANDREW MCFARLANE, Warden; JIMMY | ) | |
| KELLOM; SGT. MOORE; CERT OFFICER | ) | |
| GARNER; and OFC. CASTRO, | ) | |
| | ) | |
| Defendants. | ) | |

**O R D E R**

Plaintiff, incarcerated at Telfair State Prison in Helena, Georgia, has submitted to the Court for filing a complaint brought pursuant to 42 U.S.C. § 1983. He is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

**I.    BACKGROUND**

Plaintiff names as Defendants: (1) Warden Andrew McFarlane, (2) Unit Manager Jimmy Kellom, (3) Sergeant Moore, (4) Officer Castro, and (5) Cert. Officer Garner. (Doc. no. 1, pp. 1, 4, 8-9.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

In August 2023, while housed in a lockdown unit where Defendant Moore was the supervising officer, Plaintiff notified Defendant Castro a new inmate needed a mat and bed

linens and reminded him a few hours later. (Id. at 9-10.) Hearing Plaintiff's reminder, Defendant Moore instructed Defendant Castro to "spray his . . . ass," and Defendant Castro sprayed pepper spray directly in Plaintiff's face without further warning, causing temporary blindness and immediate breathing difficulties. (Id. at 10-11.)

After running to Plaintiff's cell from the other side of the dorm, Defendant Moore sprayed more pepper spray into Plaintiff's cell and closed the tray flap to maximize the effect. (Id. at 11.) Plaintiff is asthmatic and struggled to breathe in the contaminated cell. (Id. at 11, 13.) Defendant Moore returned to spray the cell a second time prior to shift change and left Plaintiff untreated in the contaminated cell through the night. (Id.) In so doing, Defendant Moore violated state policies promulgated by the Georgia Attorney General requiring, among other things, removal from the contaminated area, exposure to fresh air, and running cold water over exposed skin. (Id. at 12-13.)

Prison officials did not issue Plaintiff a disciplinary referral for any conduct related to this incident. (Id. at 14.) No one conducted an investigation or requested a statement from Plaintiff. (Id.) Defendants Moore and Castro did not file a written use of force report as required by GDC policy and operating procedures. (Id. at 14-15.) The day after this incident, Plaintiff requested a grievance form, and Defendant Moore denied the request. (Id. at 15.) Plaintiff was eventually able to obtain a grievance form from a dorm orderly. (Id. at 15-16.) Defendant McFarlane forwarded the grievance to GDC Criminal Investigation Division and, as a result, Defendant McFarlane closed the grievance including the appeal process. (Id. at 3-4, 17.)

Defendant McFarlane knew officers regularly used excessive force in the form of pepper spray, other chemical agents, and tasers as a means of punishment for reasons that did

not justify such action. (Id. at 13-14.) Defendant McFarlane tolerated and allowed this unlawful and abusive practice to continue to exist with "complete impunity." (Id.) He was made aware of this behavior through grievances, inmate complaints, and personal observation. (Id. at 13.)

On June 24, 2024, Defendant Kellom refused to let Plaintiff eat lunch for no apparent reason and in violation of Georgia Department of Corrections policy. (Id. at 18.) Plaintiff attempted to raise this issue to Defendant McFarlane, but Defendant Kellom interrupted and told Plaintiff to "shut the f*** up." (Id.) Defendant Kellom pulled out his taser and threatened Plaintiff with it. (Id. at 18-19.) Plaintiff proceeded to leave the dining hall, and Defendant Kellom approached him and asked in a confrontational manner, "what are you talking about?" (Id. at 19.) Without any provocation or warning, Defendant Kellom tased Plaintiff while Plaintiff was submissive with his hands behind his back. (Id. at 19-20.) Plaintiff fell to the ground because he could not brace himself. (Id. at 20.) Defendant Kellom called a code, and Defendant Garner responded by running directly to Plaintiff as he was lying limp on the ground, spraying him with pepper spray in his face, and handcuffing him. (Id. at 20.) Defendant Kellom grabbed the pepper spray canister and sprayed Plaintiff again directly in the face while holding his head to prevent Plaintiff from moving his face away. (Id. at 20-21.) Defendant McFarlane was present during this entire incident and did not do anything to prevent or stop it. (Id. at 19, 21.)

Following the June 24th incident, Plaintiff was seen by medical personnel and locked in a holding cell overnight. (Id. at 21-22.) Defendants Kellom, Garner, and McFarlane never submitted use of force reports related to the incident, nor did they issue any disciplinary reports against Plaintiff. (Id. at 22.)

Because Plaintiff is asthmatic, these spraying incidents immediately caused him to have trouble breathing, he has continued to experience breathing problems, and medical personnel consequently prescribed a stronger inhaler with steroids due to his extreme shortness of breath. (Id. at 13, 15.) These incidents exacerbated his breathing difficulties to such an extent he is now limited in his ability to engage in normal everyday activities. (Id. at 23.) For relief, Plaintiff requests a declaratory judgment, monetary damages, and injunctive relief. (Id. at 25-27.)

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds Plaintiff has arguably stated viable excessive force claims against Defendants Moore, Castro, Kellom, and Garner. See Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). The Court also finds Plaintiff arguably states a viable claim against Defendants Moore and Castro for deliberate indifference to a serious medical need based on their refusal to allow Plaintiff to decontaminate after their use of pepper spray. See McElligott v. Foley, 182 F.3d 1248, 1254-55 (11th Cir. 1999). Further, the Court finds Plaintiff arguably states a viable claim against Defendant McFarlane in his individual capacity for failing to intervene when he witnessed Defendant Kellom's use of force against Plaintiff. See Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015) ("An officer who is present at the scene and fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable for his nonfeasance." (alterations and citations omitted)). Lastly, the Court finds Plaintiff arguably states a viable claim against Defendant McFarlane in his individual, supervisory capacity based on Plaintiff's allegations Defendant McFarlane (1) was aware of a history of widespread abuse regarding use of force at Telfair State Prison, (2) promoted an improper custom or policy regarding use of force against inmates, or (3) directed prison employees to act, or knew

4

they would act, unlawfully and failed to stop them. See Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990); Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999); Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). In a companion Report and Recommendation, the Court recommends dismissal of Plaintiff's official capacity claims for monetary damages against Defendant McFarlane.

## II.     INSTRUCTIONS

**IT IS HEREBY ORDERED** that service of process shall be effected on Defendants Moore, Castro, Kellom, Garner, and McFarlane. The United States Marshal shall mail a copy of the complaint, (doc. no. 1), and this Order by first-class mail and request that Defendants waive formal service of the summons. Fed. R. Civ. P. 4(d). Individual defendants have a duty to avoid unnecessary costs of serving the summons, and if a defendant fails to comply with the request for waiver, the defendant must bear the costs of personal service unless good cause can be shown for failure to return the waiver. Fed. R. Civ. P. 4(d)(2). A defendant whose return of the waiver is timely does not have to answer the complaint until sixty days after the date the Marshal mails the request for waiver. Fed. R. Civ. P. 4(d)(3). However, service must be effected within ninety days of the date of this Order, and the failure to do so may result in the dismissal of any unserved defendant or the entire case. Fed. R. Civ. P. 4(m). Plaintiff is responsible for providing sufficient information for the Marshal to identify and locate Defendants to effect service.

**IT IS FURTHER ORDERED** Plaintiff shall serve upon the defendants, or upon their defense attorney(s) if appearance has been entered by counsel, a copy of every further pleading or other document submitted to the Court. Plaintiff shall include with the papers to be filed a certificate stating the date a true and correct copy of any document was mailed to the defendant or their counsel. Fed. R. Civ. P. 5; Loc. R. 5.1. Every pleading shall contain a caption setting forth

the name of the court, the title of the action, and the file number. Fed. R. Civ. P. 10(a). Any paper received by a District Judge or Magistrate Judge that has not been properly filed with the Clerk of Court or that fails to include a caption or certificate of service will be returned.

It is Plaintiff's duty to cooperate fully in any discovery that may be initiated by defendants. Upon being given at least five days' notice of the scheduled deposition date, Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath and solemn affirmation, any question that seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, <u>including dismissal of this case</u>. Defendants shall ensure Plaintiff's deposition and any other depositions in the case are taken <u>within the 140-day discovery period</u> allowed by this Court's Local Rules.

Plaintiff must pursue this case; if Plaintiff does not press the case forward, the Court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Loc. R. 41.1. If Plaintiff wishes to obtain facts and information about the case from the defendants, Plaintiff must initiate discovery. <u>See generally</u> Fed. R. Civ. P. 26 through 37 (containing the rules governing discovery and providing for the basic methods of discovery). Plaintiff should begin discovery promptly and complete it within four months after the filing of the first answer of a defendant named in the complaint screened herein.

Interrogatories are a practical method of discovery for *pro se* litigants. <u>See</u> Fed. R. Civ. P. 33. Interrogatories shall not contain more than twenty-five questions. <u>Id.</u> Plaintiff must have the Court's permission to propound more than one set of interrogatories to a party. Discovery materials should not be filed routinely with the Clerk of the Court; exceptions include when the Court directs filing; when a party needs such materials in connection with a motion or response,

6

and then only to the extent necessary; and when needed for use at trial. If Plaintiff wishes to file a motion to compel pursuant to Fed. R. Civ. P. 37, he should first contact the attorney for the defendant and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Loc. R. 26.5.

Plaintiff must maintain a set of records for the case. If papers are lost and new copies are required, these may be obtained from the Clerk of the Court at the standard cost of fifty cents per page.

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve their response to the motion within fourteen days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Loc. R. 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that there is no opposition to the defendant's motion and grant the dismissal.

A response to a motion for summary judgment must be filed within twenty-one days after service of the motion. Loc. R. 7.5, 56.1. A failure to respond shall indicate that there is no opposition to the motion. Loc. R. 7.5. Furthermore, each material fact set forth in a defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should a defendant file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine issue as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should a defendant's motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the defendant's statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that

there is a genuine issue for trial, the consequences are these: any factual assertions made in the defendant's affidavits will be accepted as true and summary judgment will be entered against Plaintiff pursuant to Fed. R. Civ. P. 56.

**While this action is pending, Plaintiff shall immediately inform this Court and opposing counsel of any change of address. Failure to do so will result in dismissal of this case.**

SO ORDERED this 15th day of January, 2025, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA