IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| BENJAMIN NASH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 324-066 |
| | ) | |
| ANDREW MCFARLANE, Warden; JIMMY | ) | |
| KELLOM; SGT. MOORE; CERT OFFICER | ) | |
| GARNER; and OFC. CASTRO, | ) | |
| | ) | |
| Defendants. | ) | |

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

_____

Plaintiff, incarcerated at Telfair State Prison in Helena, Georgia, has submitted to the Court for filing a complaint brought pursuant to 42 U.S.C. § 1983.  He is proceeding *pro se* and *in forma pauperis* ("IFP").  Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants.  Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

## I.    SCREENING THE COMPLAINT

### A.    BACKGROUND

Plaintiff names as Defendants:  (1) Warden Andrew McFarlane, (2) Unit Manager Jimmy Kellom, (3) Sergeant Moore, (4) Officer Castro, and (5) Cert. Officer Garner.  (Doc. no. 1, pp. 1, 4, 8-9.)  Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

In August 2023, while housed in a lockdown unit where Defendant Moore was the supervising officer, Plaintiff notified Defendant Castro a new inmate needed a mat and bed linens and reminded him a few hours later.  (Id. at 9-10.)  Hearing Plaintiff's reminder, Defendant Moore instructed Defendant Castro to "spray his . . . ass," and Defendant Castro sprayed pepper spray directly in Plaintiff's face without further warning, causing temporary blindness and immediate breathing difficulties.  (Id. at 10-11.)

After running to Plaintiff's cell from the other side of the dorm, Defendant Moore sprayed more pepper spray into Plaintiff's cell and closed the tray flap to maximize the effect.  (Id. at 11.)  Plaintiff is asthmatic and struggled to breathe in the contaminated cell. (Id. at 11, 13.)  Defendant Moore returned to spray the cell a second time prior to shift change and left Plaintiff untreated in the contaminated cell through the night.  (Id.)  In so doing, Defendant Moore violated state policies promulgated by the Georgia Attorney General requiring, among other things, removal from the contaminated area, exposure to fresh air, and running cold water over exposed skin.  (Id. at 12-13.)

Prison officials did not issue Plaintiff a disciplinary referral for any conduct related to this incident.  (Id. at 14.)  No one conducted an investigation or requested a statement from Plaintiff.  (Id.)  Defendants Moore and Castro did not file a written use of force report as required by GDC policy and operating procedures.  (Id. at 14-15.)  The day after this incident, Plaintiff requested a grievance form, and Defendant Moore denied the request.  (Id. at 15.)  Plaintiff was eventually able to obtain a grievance form from a dorm orderly.  (Id. at 15-16.)  Defendant McFarlane forwarded the grievance to GDC Criminal Investigation Division and, as a result, Defendant McFarlane closed the grievance including the appeal process.  (Id. at 3-4, 17.)

Defendant McFarlane knew officers regularly used excessive force in the form of pepper spray, other chemical agents, and tasers as a means of punishment for reasons that did not justify such action.  (Id. at 13-14.)  Defendant McFarlane tolerated and allowed this unlawful and abusive practice to continue to exist with "complete impunity."  (Id.)  He was made aware of this behavior through grievances, inmate complaints, and personal observation.  (Id. at 13.)

On June 24, 2024, Defendant Kellom refused to let Plaintiff eat lunch for no apparent reason and in violation of Georgia Department of Corrections policy.  (Id. at 18.)  Plaintiff attempted to raise this issue to Defendant McFarlane, but Defendant Kellom interrupted and told Plaintiff to "shut the f*** up."  (Id.)  Defendant Kellom pulled out his taser and threatened Plaintiff with it.  (Id. at 18-19.)  Plaintiff proceeded to leave the dining hall, and Defendant Kellom approached him and asked in a confrontational manner, "what are you talking about?"  (Id. at 19.)  Without any provocation or warning, Defendant Kellom tased Plaintiff while Plaintiff was submissive with his hands behind his back.  (Id. at 19-20.)  Plaintiff fell to the ground because he could not brace himself.  (Id. at 20.)  Defendant Kellom called a code, and Defendant Garner responded by running directly to Plaintiff as he was lying limp on the ground, spraying him with pepper spray in his face, and handcuffing him.  (Id. at 20.)  Defendant Kellom grabbed the pepper spray canister and sprayed Plaintiff again directly in the face while holding his head to prevent Plaintiff from moving his face away.  (Id. at 20-21.)  Defendant McFarlane was present during this entire incident and did not do anything to prevent or stop it.  (Id. at 19, 21.)

Following the June 24th incident, Plaintiff was seen by medical personnel and locked in a holding cell overnight.  (Id. at 21-22.)  Defendants Kellom, Garner, and McFarlane never

submitted use of force reports related to the incident, nor did they issue any disciplinary reports against Plaintiff. (Id. at 22.)

Because Plaintiff is asthmatic, these spraying incidents immediately caused him to have trouble breathing, he has continued to experience breathing problems, and medical personnel consequently prescribed a stronger inhaler with steroids due to his extreme shortness of breath. (Id. at 13, 15.) These incidents exacerbated his breathing difficulties to such an extent he is now limited in his ability to engage in normal everyday activities. (Id. at 23.) For relief, Plaintiff requests a declaratory judgment, monetary damages, and injunctive relief. (Id. at 25-27.)

### B.    DISCUSSION

#### 1.    Legal Standard for Screening

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. See Bilal v. Geo Care, LLC, 981 F.3d 903, 911 (11th Cir. 2020); Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2.    Plaintiff's Official Capacity Monetary Claims

Plaintiff sues Defendant McFarlane in his individual and official capacities. (Doc. no. 1, p. 8.) However, the Eleventh Amendment bars official capacity claims against state officials for money damages. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Therefore, Plaintiff's official capacity claims against Defendant McFarlane for monetary relief fail as a matter of law and should be dismissed.

## II.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** all official capacity claims for monetary damages against Defendant McFarlane be **DISMISSED**. By separate Order, the Court directs service of process on Defendants Moore, Castro, Kellom, Garner, and McFarlane in their individual capacities based upon Plaintiff's allegations of excessive use of force, medical deliberate indifference, and failure to intervene.

SO REPORTED and RECOMMENDED this 15th day of January, 2025, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA